Angel Rosendo Irizarry, demandante y apelado, *v.* Porto Rico Auto Corporation y Enrique Ferrer, demandados y apelantes.

Núm. 8482.—*Sometido:* Enero 19, 1942. *Resuelto:* Febrero 24, 1942.

*Francis & Belaval,* abogados de los apelantes; *R. Atiles Moréu,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Angel Rosendo Irizarry, vecino de Ponce, demandó a la Porto Rico Auto Corporation y a Enrique Ferrer, agente de la corporación en Ponce, reclamándoles cinco mil dólares por daños y perjuicios por injuria y calumnia. Fué el pleito a juicio y la corte del distrito lo resolvió por sentencia de noviembre 5, 1941, condenando a los demandados a pagar al demandante seiscientos dólares con las costas y ciento cincuenta dólares para honorarios de abogado.

Los demandados apelaron para ante este tribunal quedando radicada la transcripción de los autos el nueve de enero último. Al día siguiente el demandante presentó una moción solicitando la desestimación del recurso por frívolo y por no haber sido interpuesto de buena fe. Regla 59 del Reglamento del Tribunal Supremo. Código de Enjuiciamiento Civil, ed. 1933, pág. 390.

El 19 del propio mes de enero se celebró la vista de la moción. El demandante apelado no compareció pero radicó un "brief" en apoyo de su solicitud. Los demandados y apelantes comparecieron por sus abogados, informando oralmente y presentando una oposición escrita a la moción.

En su relación del caso y opinión la corte sentenciadora después de resumir las alegaciones de ambas partes y de referirse al acto de la vista en el que el demandante además de su propio testimonio presentó las declaraciones de los testigos Carmelo Torres, Angel C. García, Angel M. Hernández y Robustiano Falcón, policías insulares los tres últimos, y los demandados presentaron por toda evidencia la declaración de uno de ellos, Enrique Ferrer, declaró probados los siguientes hechos:

"Que la Puerto Rico Auto Corporation es una corporación constituída con arreglo a las Leyes de Puerto Rico, e inscrita en la Se-

cretaría Ejecutiva, con oficina principal en San Juan, Puerto Rico, y sucursal en Ponce.

"Que para la fecha de los hechos objeto de esta demanda, la Puerto Rico Auto Corporation estaba a cargo y bajo el control exclusivo de su agente o gerente general de dicha sucursal en Ponce, el co-demandado Enrique Ferrer.

"Que para el día de los hechos el demandante Ángel Rosendo Irizarry, actuaba en dicha sucursal en su carácter de encargado del departamento de piezas, cargo que desempeñó hasta el día 17 de marzo de 1940.

"Que el día 17 de marzo de 1940, como a las 11:30 de la noche, Enrique Ferrer notó que faltaba en el salón de exhibiciones de la sucursal en Ponce un automóvil Packard nuevo, tablillas X–1717, e inmediatamente se personó en la residencia del demandante Ángel Rosendo Irizarry, quien tenía las llaves del local, y libre acceso al mismo, y le increpó en el sentido de que le dijera dónde había es-condido el automóvil que faltaba, y que él había hurtado del salón de exhibiciones, ya que la única persona que podía haber hecho eso era el propio demandante.

"Que cuando ambos (el demandante y el codemandado) llegaron al garage, notaron que la cerradura había sido rota y violentada, acusando Ferrer al demandante del hurto del automóvil, a pesar de las reiteradas protestas de inocencia del demandante, y tomando la cerradura violentada y rota como un ardid o estratagema del de-mandante para ocultar su crimen y despitar a las autoridades.

"Que el codemandado insistió cerca del demandante en que él era el autor del hurto, que le dijera dónde había chocado el automóvil para irlo a buscar, y que si el automóvil no aparecía daría parte a la policía para arrestarlo por el hurto del automóvil.

"Que el codemandado Enrique Ferrer comunicó al policía Ángel M. Hernández que la persona que andaba en el automóvil era el demandante Ángel Rosendo Irizarry, y que lo arrestara tan pronto lo viera.

"Que Ferrer informó al policía Ángel Cecilio García que el de-mandante cogió el automóvil, se metió en fiesta y lo chocó.

"La corte está convencida de las imputaciones de Ferrer al de-mandante, en el sentido de que se había robado el automóvil, se había metido en fiesta y lo había chocado. No tiene dudas la corte que de esas imputaciones se enteraron, además de los policías, personas ex-trañas que no eran ni el demandante ni los demandados.

" 'El responsable del robo del carro es Irizarry', declaró Carmelo Torres, quien presenció y escuchó una conversación entre el policía

Hernández y el demandado Ferrer, y oyó esas manifestaciones del codemandado al policía.''

Resolviendo la cuestión de si la comunicación del codemandado Ferrer fué o no privilegiada, lo hace seguidamente como sigue:

''Este tribunal ha examinado cuidadosa y detenidamente toda la evidencia, y encuentra que la publicación a los policías lo fué restringidamente privilegiada. La publicación hecha a Carmelo Torres y al muchacho que se declaró culpable del hurto del automóvil, no gozaba de ningún privilegio, por tratarse de personas extrañas, que no eran ni el demandante ni los demandados.

''Aunque las manifestaciones a la policía, en el presente caso, eran restringidamente privilegiadas, dicho privilegio fué excedido y abusado, ya que esas manifestaciones no se hicieron de buena fe, y no estaban fundadas en una causa razonable y probable, ni en hechos que hicieran creer a Ferrer que el demandante era el autor del delito.''

Y refiriéndose a la conducta del codemandado Ferrer y a la falta de causa probable, expresa:

''El demandante tenía las llaves del salón de exhibiciones y libre acceso a dicho salón, por lo que el codemandado Ferrer no debió llegar a la conclusión de que el demandante había violentado la cerradura para despistar su delito.

''Ordenar el codemandado Ferrer a la policía que arrestara e investigara al demandante, o que lo arrestara para investigación, acusa una indiferencia absoluta hacia los derechos del demandante, ya que no había evidencia alguna o causa probable que justificara esa detención o arresto.

''La investigación de buena fe y honesta era lo procedente, sin hacer imputaciones caprichosas, y sin ordenar el arresto del demandante para luego investigar. Aunque el arresto no se practicó, ya que el automóvil apareció posteriormente, creemos que la publicación a la policía fué innecesaria y negligentemente excesiva, y hubo la pérdida del privilegio, siendo dicha publicación maliciosa, dentro del concepto de la ley.''

Continúa la corte declarando probado el hecho de la acusación de ladrón, por quién se hizo y en qué forma, fijando sus consecuencias legales, como sigue:

"La corte da como un hecho probado que el codemandado Ferrer, actuando dentro del radio de sus funciones como agente y gerente general de la sucursal de la codemandada Puerto Rico Auto Corporation, y en ocasión de sus funciones, acusó al demandante de ladrón, y públicamente le imputó la comisión de un delito público.

"Ya ha resuelto nuestro Hon. Tribunal Supremo que llamar 'ladrón' a una persona es libeloso *per se*. (*Jiménez* v. *Díaz Caneja*, 14 D.P.R. 9, y *Palou* v. *Ríos*, 23 D.P.R. 363.) Tratándose de una imputación enjuiciable per se, la malicia se presume concluyentemente, y no hay que probarla.

"Es perfectamente aplicable a esta situación, el reciente caso de *Mulero* v. *Martínez*, 58 D.P.R. 321, donde nuestra Hon. Superioridad se expresó en los siguientes términos:

" 'La imputación de "ladrón" hecha por un arrendador contra su arrendatario, da a éste un derecho de acción contra aquél si se hace en presencia de personas que no tienen relación alguna con el ofensor que dé a la comunicación el carácter de privilegiada.

" 'La malicia es elemento esencial de la acción de daños y perjuicios por libelo, no así de la de daños y perjuicios por calumnia, en la cual basta que la publicación sea falsa e ilegal.

" 'En el libelo como en la calumnia, la publicación es el elemento esencial. Es sólo cuando las imputaciones calumniosas se comunican por escrito o por medio de palabra a persona distinta de la difamada o calumniada que existe la publicación necesaria para que pueda surgir un derecho de acción.

" 'Cuando las imputaciones difamatorias y calumniosas imputan la comisión de un delito, la presunción legal de inocencia es evidencia prima facie de la falsedad de la imputación y de la falta de causa probable. Establecido el hecho de la publicación, al demandado incumbe probar en su defensa la verdad de los hechos imputados.

" 'Cuando se imputa la comisión de un hecho constitutivo de delito, el libelo o calumnia es "actionable per se". En la acción de daños y perjuicios consiguiente, el demandante no necesita probar que sufrió daños en su comercio o negocio, por ser inmaterial la cuestión de si él era o no comerciante a la fecha de la imputación.' "

Insiste la corte en que la falsedad de la imputación quedó demostrada y agrega que la publicación no sólo se hizo a los policías, si que de ella se enteraron otras personas, estableciendo el alcance que ello tiene de acuerdo con la jurisprudencia, en los siguientes términos:

"Quedó establecido por la prueba que era falsa e ilegal la imputación que le hiciera el codemandado al demandante. Hay evidencia de que más de una persona extraña se enteró de las imputaciones hechas por Ferrer al demandante. Pero basta que una sola persona se entere, aunque ésta no le dé crédito a la imputación.

" 'A second fundamental principle in regard to the publication of defamatory matter is that it is not necessary in matters of libel or slander that the defamation should be made known to the public generally, or even to a considerable number of persons. It is sufficient if it be communicated to only one person other than the person defamed, and such a publication suffices even though such person does not believe what is said of the person defamed, at least when the words are uttered maliciously. This is true for the reason that the injury to the reputation of the plaintiff is not the sole element of injury, and the jury has a right to consider also the mental suffering of the person slandered.' 17 Ruling Case Law, pág. 315, 36 Corpus Juris, pág. 1227."

Y refiriéndose, por último, a los daños causados y a la responsabilidad de la codemandada Porto Rico Auto Corporation, concluye:

"Es indudable que la publicación de las imputaciones constitutivas de delito público, y la palabra 'ladrón,' proferida contra el demandante, le han ocasionado daños a su reputación, y a su prestigio en la comunidad, y naturalmente, le han causado angustias mentales, siendo ello la natural secuela de la publicación falsa e ilegal. Los daños se presumen y no precisa probarlos. (*Rivera* v. *Martínez,* 26 D.P.R. 760; *Franco* v. *Martínez,* 29 D.P.R. 237; *Mulero* v. *Martínez,* 58 D.P.R. 321.)

"La corte no cree necesario, de acuerdo con la jurisprudencia establecida en *Mulero* v. *Martínez,* ut supra, descansar su sentencia en la prueba de daños específicos, toda vez que el demandante no necesita probar que ha sufrido daños en su comercio o negocio, o en sus actividades comerciales, siendo todo ello inmaterial, presumiéndose los daños en casos de esta naturaleza.

"La responsabilidad de la codemandada Puerto Rico Auto Corporation, por los actos de su agente y gerente general de su sucursal de Ponce, actuando dentro del radio de su empleo, y en ocasión de sus funciones, es clara:

" 'Slander—Majority Rule. Most courts hold a corporation liable for slander under the same conditions as it would be liable for

libel.' The rule generally prevailing and supported by the over-whelming weight of authority is that a corporation is liable for slander uttered by its officer, agent, or employee with its authority or within the scope of his employment in the course of the corporate business in which he is engaged or employed. This rule is applicable although the corporation has no knowledge of the slander and does not approve of it and whether the individual uttering the slander is a managing officer or a mere agent. Under this rule it has been held that to charge a corporation with slander for words spoken by its agent, the evidence need only show that the words spoken were within the apparent scope of the agent's employment or be sufficient to imply an authority to represent the company in their utterance. If there is evidence from which it can reasonably be inferred that the words were spoken within the scope of the agent's authority, the question whether the authority may be implied is for the jury; but when only one inference may be drawn and that one is that there was lack of authority in such respect, the question is for the court.' (13 American Jurisprudence, pág. 1053, 1055, Sección 1127.) (19 Corpus Juris Secundum, pág. 958, 959, sección 1280(b).)''

■ Hemos estudiado la transcripción de la evidencia y a nuestro juicio sostiene la declaración de hechos probados de la corte sentenciadora. La ley y la jurisprudencia han sido bien expuestas y aplicadas a los hechos del caso. Se trata en verdad de una apelación frívola, que debe ser desestimada· como ordenan las reglas de la corte.

Hemos leído cuidadosamente la extensa moción de oposición a la desestimación presentada por la parte apelante y su estudio no ha levantado en nuestra mente duda seria alguna. Creemos que dejar de resolver el caso ahora en definitiva no produciría otro efecto que dilatar la ejecución de la sentencia, ya que habría de llegarse siempre a la misma conclusión.

*Debe declararse con lugar la moción y en su consecuencia desestimarse, por frívolo, el recurso, quedando la sentencia recurrida confirmada.*

El Juez Asociado Sr. Travieso no intervino.