José M. Moraza, demandante y apelado, *v.* Rexach Racing and Sporting Corporation, demandada y apelante.

Núm. 9444.—*Sometido:* Diciembre 4, 1947.  *Resuelto:* Marzo 19, 1948.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante; *Víctor J. Vidal González,* abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Este pleito es el resultado de una controversia en relación con una cuadra radicada en los terrenos del hipódromo perteneciente a la Rexach Sporting Corporation. Dicha

cuadra fué "reconstruída" por José M. Moraza, dueño de caballos, con el consentimiento de la corporación y la ha venido usando por un canon mensual de $15. Luego Moraza vendió la cuadra a Ernesto Nieves bajo la teoría de que él la había construído en terrenos de la corporación y de que le pertenecía. Nieves fué a ver a José A. Rexach, Presidente de la corporación, para que éste le entregara la cuadra. Rexach se negó a ello. Le dijo a Nieves que la cuadra pertenecía a la corporación, no a Moraza, y que éste no tenía derecho a venderla. Durante el curso de esta conversación Rexach llamó pillo a Moraza por estar éste tratando de vender la cuadra. Nieves contó el incidente a Moraza. Éste fué a ver a Rexach obteniendo sustancialmente el mismo resultado.

Más tarde Moraza demandó a la corporación, alegando dos causas de acción. La primera solicitaba daños por $1,500, por haberse negado la demandada a dar cumplimiento a la petición del demandante de que le entregara la cuadra a él, (o a la persona que el demandante ordenare) o le pagara $1,500, valor de la misma. La segunda pedía daños ascendentes a $25,000 debido al supuesto lenguaje calumnioso proferido por Rexach con respecto al demandante.

Al comenzar el juicio la corte de distrito, basándose en el caso de *Rivera* v. *Santiago,* 56 D.P.R. 381, declaró con lugar la moción de la demandada para que se desestimara la primera causa de acción por no aducir hechos suficientes para constituir una causa de acción. El demandante no apeló de dicha actuación de la corte. En cuanto a la segunda causa de acción se celebró un juicio en los méritos. La corte inferior dictó sentencia a favor del demandante por la suma de $850 y $100 para honorarios de abogados, de la cual la demandada ha apelado.

■■ El primer error señalado es que la evidencia presentada por el demandante era insuficiente como cuestión

de derecho. Solamente declararon por el demandante tres testigos, no ofreciendo la demandada prueba de clase alguna.

Nieves declaró que fué a ver a Rexach y le preguntó con qué derecho había entregado a un tercero la cuadra que Nieves le había comprado a Moraza; que Rexach le dijo que la cuadra pertenecía a la corporación y que él, como Presidente de la corporación, podía hacer con ella lo que quisiera; que el testigo le informó a Rexach que le había comprado la cuadra a Moraza y que se la había pagado; que Rexach le contestó, "usted no puede comprar esa cuadra porque no es de Moraza. Si Moraza la vendió es un pillo y el que le compra a un pillo es otro pillo también''; que vió a Rexach en la casa donde vivía cerca del hipódromo durante un día de carreras; y que Rexach profirió estas palabras gritando, causando con ello una gran aglomeración de personas que oyeron la discusión.

Moraza declaró que él se dedica al negocio de automóviles y caballos de carreras; que se ha entendido con Rexach como Presidente y "dueño" de la corporación; que como resultado de la conversación entre Nieves y Rexach, fué a ver al segundo; que le dijo a Rexach "don Pepe, ¿cómo le dice a Nieves que él no puede meter sus caballos ahí, si usted sabe que yo he hablado con usted, y le dije que iba a vender la cuadra a él y se la he vendido porque la cuadra es mía?''; que Rexach le dijo que "era un pillo, canalla, sinvergüenza, un maricón, que yo no podía vender eso, que quién me metía a mí a esas cosas, al extremo que tuve que coger el carro y seguir andando, porque se aglomeró tanta gente''; que cuarenta o cincuenta personas, que venían del hipódromo, oyeron esas palabras; que como Rexach tenía alrededor de 80 años de edad no se atrevió a replicarle y se fué.

Rafael Pelati Delgado declaró para corroborar la declaración de Nieves en cuanto a la discusión habida entre éste y Rexach.(¹)

La corte de distrito aparentemente fué de opinión que el llamarle "pillo" a una persona, automáticamente da lugar a una causa de acción por calumnia, independientemente de las circunstancias concurrentes o del resto del lenguaje en que se empleó el epíteto. Al fallar el caso a favor del demandante, dijo la corte que "En la común parlanza de Puerto Rico la palabra 'pillo' es un sinónimo de 'ladrón'. El llamar ladrón a una persona es libeloso *per se*. *Jiménez* v. *Díaz Caneja*, 14 D.P.R. 9; *Palou* v. *Ríos*, 23 D.P.R. 363; *Mulero* v. *Martínez*, 58 D.P.R. 321.''

Cuando una manifestación es calumniosa *per se,* procede el reparo sin necesidad de probar daños efectivos. *Méndez* v. *Kraidman*, 63 D.P.R. 281. Pero según nuestra ley una manifestación es calumniosa *per se* solamente si ella imputa al demandante la comisión de un delito. Sección 3 de la Ley que Establece los Pleitos por Libelo y Calumnia, Código de Enjuiciamiento Civil, ed. de 1933, pág. 308.(²) Por tanto, la manifestación de que el demandante es un pillo es calumniosa *per se,* si dicho epíteto se emplea literalmente para imputar la comisión de un delito. Pero si

---

(¹)En el curso de su declaración Pelati manifestó que Rexach había dicho también: ''¿Usted no sabe que el Sr. Moraza y otros dueños de caballos le robaron $20,000 a la corporación de unos caballos?'' La demanda no tiene alegación alguna sobre esta manifestación. La demanda dice algo bastante diferente: que Rexach dijo que la corporación había ''perdido'' veinte mil dólares con caballos de carreras, incluyendo a Moraza. La corte inferior no basó su sentencia en esta manifestación. Descansó únicamente en el uso del epíteto ''pillo'' en relación con la venta de la cuadra por Moraza. Tampoco predicó el demandante en este lenguaje su reclamación ante la corte inferior o ante este Tribunal. Por tanto, no lo hemos considerado en esta opinión.

(²)La sección 3 también dispone que una manifestación es calumniosa si ''tiende directamente a perjudicarle con relación a su oficina, profesión, comercio o negocios, o que, como consecuencia natural, le cause daños reales y efectivos.'' En este caso no está envuelta ninguna de estas dos alternativas. La sentencia está predicada solamente en la conclusión de que el demandado le imputó al demandante la comisión de un delito al llamarlo ''pillo''.

las circunstancias y el resto del lenguaje empleado demuestran que la frase se profirió en sentido figurado como una mera expresión de abuso en un arrebato de excitación y pasión, esto no constituye la imputación de que el demandante cometió un delito, y en consecuencia, no es calumniosa *per se.* Anotación, 37 A.L.R. 883; L.R.A. 1917 D 205; *Hansen v. Dethridge,* 67 N.Y.S.2d 168 (1946); *Jones v. Hill,* 146 P.2d 294 (Okla., 1944); *Dalton v. Woodward,* 280 N.W. 215 (Neb., 1938); *Shankroff v. La Guardia,* 61 N.Y.S.2d 839 (1935).

Los casos citados por la corte inferior concurren con este criterio. En el caso de *Jiménez* no se alegó que el demandado no empleara la palabra "ladrón" literalmente. Y el fallo en dicho caso fué de hecho a favor del demandado sobre una cuestión no pertinente aquí. En los casos de *Mulero v. Martínez,* supra, *Díaz v. P. R. Ry., Light & Power Co.,* 63 D.P.R. 808, y casos en este último citados, estas manifestaciones fueron patentes imputaciones de delito más bien que términos abusivos proferidos en sentido figurado.

Por otro lado, el caso de *Palou* es enteramente de aplicación. Allí la demandada había cedido en arrendamiento un bien inmueble a la firma de la cual el demandante era miembro. Al exigirle al demandante el pago del canon de arrendamiento, la demandada lo llamó un "sinvergüenza, pillo y ladrón". Revocamos la sentencia de la corte de distrito a favor del demandante, diciendo a la pág. 366:

"Ahora bien; de acuerdo con la ley y la jurisprudencia, no siempre que se llama 'ladrón' a una persona se comete el delito de calumnia, y a nuestro juicio, después de un estudio cuidadoso de la prueba practicada y de los mismos hechos declarados probados por el juez sentenciador, no es posible concluir que la intención manifiesta de la demandada en este pleito fuera la de imputar al demandante un verdadero delito de hurto o robo. La demandada cobró en forma incorrecta y abusiva en verdad una deuda al demandante. Éste reconoció la existencia de la deuda, pero alegó que no era él sino una sociedad de la que formaba parte la que debía el dinero reclamado por la demandada. Todos los que oyeron a la demandada pudieron comprender perfectamente que se trataba de un asunto de negocios, en el

que una mujer, la demandada, parte en el mismo, en un momento de calor o de ira, fué más allá de lo que las buenas formas y el propio respeto exigen de consuno, pero no de la fría y consciente imputación de un delito.".

Recientemente resolvimos lo mismo en un.caso criminal, en el que se imputaba al acusado el delito de calumnia por haber llamado "pillo" a un funcionario público. *Pueblo* v. *Pargas,* 67 D.P.R. 818.

■ De igual manera creemos que en este caso un hombre de 80 años de edad, en un momento de indignación mientras discutía un negocio, fué más allá de la debida compostura. Pero su lenguaje, al ser oído como parte de todas las discusiones habidas, fué una reprimenda al demandante por haber vendido una cuadra que Rexach creyó no tenía derecho a vender, y no una acusación deliberada y consciente de que el demandante había cometido un delito. En verdad, el propio demandante, al no apelar de la sentencia desestimando la primera causa de acción, aparentemente ha admitido que hubo alguna justificación para la indignación de Rexach, porque el demandante había vendido la cuadra radicada en terrenos de la corporación demandada. De cualquier modo, no importa los méritos de la disputa en cuanto al *status* de la cuadra, es evidente que la caracterización de Moraza por Rexach como un "pillo, canalla, sinvergüenza" fué un ex abrupto consecuencia de la contrariedad ocasionádale por la conducta de Moraza, y no realmente una acusación de delito. El empleo de los vituperios y ultrajes es de muy mal gusto; pero no constituye calumnia *per se.*

■ Llegamos al mismo resultado en relación con el uso de la palabra "maricón". Suponemos que si se hiciera tal manifestación con un delito sexual en mente, sería calumniosa *per se.* Pero, además del hecho de que la corte de distrito no descansó en el uso de este epíteto, estamos satisfechos bajo todas las circunstancias, que una vez más Rexach desencadenaba su ira sobre Moraza dándole un nombre vul-

gar más bien que acusándole de delitos sexuales. Rexach puede haber alterado la paz con su violento lenguaje; pero no puede decirse razonablemente que su intención fué que se interpretaran literalmente éste o los otros epítetos oprobiosos. *Morrissette* v. *Beatte,* 17 A.2d 464 (R. I., 1941).

Nuestra conclusión en cuanto al primer error hace innecesario que examinemos los otros errores señalados por la apelante, incluyendo el supuesto error de hacer responsable a la corporación demandada por las manifestaciones vertidas por su Presidente.

*La sentencia de la corte de distrito será revocada y se dictará sentencia declarando sin lugar la demanda.*

El Juez Asociado Sr. Marrero no intervino.