OSCAR RODRÍGUEZ RAMOS, demandante y apelado, v. WATERMAN DOCK COMPANY, demandada y apelante.

Número 11186.

Sometido: 7 de julio de 1954. Resuelto: 7 de octubre de 1955.

*James R. Beverley, R. Rodríguez Lebrón y Ramón Enrique Qui-*
*ñones,* abogados de la apelante; *Guillermo Bauzá,* abogado
del apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del
Tribunal.

Se trata de una acción de daños y perjuicios por persecu-
ción maliciosa, calumnia y arresto ilegal.   Celebrado el juicio
en los méritos, el tribunal sentenciador dictó sentencia a favor
del demandante por la suma de $3,000 más $250 para honora-
rios de abogado.   El caso se encuentra ante nos en apelación
interpuesta por la demandada contra dicha sentencia.

Oscar Rodríguez Ramos, el demandante, trabajaba
para la demandada Waterman Dock Company en calidad de
dependiente.   El 25 de junio de 1947 Varo Quiñones llegó al
muelle de la demandada para cargar 200 latas de manteca y
unos 50 sacos de avena.   Las 200 latas de manteca fueron
colocadas en el camión bajo la supervisión del demandante,
quien luego se retiró a cumplir otros deberes.   En ausencia
del demandante, Quiñones ordenó a sus dos peones que colo-
caran 10 latas más de manteca en el camión.   Aparentemente
luego se probó que Quiñones hizo esto porque contó errónea-
mente las latas y de buena fe creyó que sólo se habían colo-
cado 190 latas en su camión.

Cuando el camión llegó al portón de salida dos de los em-
pleados de la demandada, en el desempeño ordinario de sus

deberes, cotejaron la carga contra el boleto de carga. Descubrieron que en el camión había 210 latas de manteca mientras que el boleto autorizaba 200 latas. Uno de estos empleados, cumpliendo instrucciones previas de sus superiores para situaciones como ésta, le comunicó los hechos a Joseph F. Fortunatti, Gerente de Operaciones de la demandada. Éste inmediatamente llamó por teléfono al Negociado Federal de Investigaciones, comúnmente conocido como el *F.B.I.* Fortunatti impuso al *F.B.I.* de los hechos y de su creencia de que se trataba de un hurto. No mencionó el nombre de persona alguna como responsable del mismo.

El *F.B.I.* envió dos agentes al muelle de la demandada para que investigaran el asunto. Uno de los agentes, Howard D. Wesley, se acercó al demandante en compañía de W. Olsip, Superintendente de Muelles de la demandada, y según el demandante: ". . . cuando venían dirigiéndose hacia mí, el Sr. Olsip me señaló con el dedo índice al agente *F.B.I.* El agente se llegó muy cortés hacia mí y me hizo varias preguntas sobre varias cosas. Me preguntó si yo era Oscar Rodríguez Ramos, le dije, sí señor, a sus órdenes, y me dijo: 'Yo deseo hablar con usted'. Y me siguió hablando y seguimos andando, y cuando iba caminando por la calle hacia la oficina, ya que entre otras cosas me había invitado a que lo acompañara a la oficina del muelle, y mientras era conducido a las oficinas, el Sr. Olsip me dijo estas palabras que bien recuerdo, delante del *F.B.I.:* 'This is the only way to stop pilferage.' "

Quiñones y sus dos peones así como el demandante fueron interrogados en la oficina de Fortunatti con respecto a los hechos del caso, incluyendo entre otras cosas el sistema de despacho de la carga. Olsip y Fortunatti estaban presentes durante el interrogatorio del demandante, que fué efectuado principalmente por los dos agentes del *F.B.I.* El demandante dijo que durante la investigación "ellos"—aparentemente los que lo interrogaban—asumieron "Una actitud pasiva; ellos lo que hacían era cumpliendo con su deber, desde luego . . .". Se le preguntó al demandante: "¿En algún momento ante los

*F.B.I.*, en presencia de ellos, los señores Olsip y Fortunatti dijeron que usted había sustraído las 10 latas de manteca?" Contestó: "En ningún momento; yo no ví ninguna acusación durante la investigación." Terminado el interrogatorio en la oficina de Fortunatti se permitió al camión llevarse la mercancía y se instruyó al demandante que regresara a su trabajo.

A solicitud de los agentes del *F.B.I.* el demandante fué a las 8 de la mañana del día siguiente a sus oficinas para continuar la investigación. Olsip y Fortunatti no estaban presentes en este interrogatorio que fué llevado a cabo exclusivamente por agentes del *F.B.I.* y que continuó hasta las 5 de la tarde. A esa hora el demandante fué arrestado mediante orden de arresto expedida por el Comisionado de Estados Unidos a base de una denuncia firmada por Wesley imputando al demandante, a Quiñones, y a los peones de éste, el hurto de mercancía que formaba parte de carga interestatal, en violación de la sec. 409 del Título 18 del Código de los Estados Unidos. Se condujo al demandante, debidamente esposado, de las oficinas del *F.B.I.* por las calles de San Juan hasta la Cárcel de la Princesa. A las 9 de la noche del mismo día fué puesto en libertad bajo fianza. Dos meses más tarde la denuncia contra el demandante y las otras personas fué archivada a moción del Fiscal Federal. El demandante siguió trabajando con la demandada.

Aparentemente el tribunal sentenciador basó su sentencia tanto en persecusión maliciosa como en calumnia. Uno de los cuatro elementos de la persecución maliciosa es que el demandante haya sido denunciado por el demandado. Dicho requisito no se cumplió en este caso. Repetidamente hemos resuelto que cuando un demandado meramente suministra información al funcionario de gobierno correspondiente y éste, a iniciativa propia y sin haber sido inducido o solicitado por el demandado, radica una denuncia contra el demandante, éste no tiene causa de acción alguna contra el demandado por persecución maliciosa. *Jiménez* v. *Sánchez*, 76 D.P.R. 370;

*Torres* v. *Marcano*, 68 D.P.R. 880; *Rivera* v. *Casiano*, 68 D.P.R. 190; *Jiménez* v. *Sánchez*, 60 D.P.R. 417; Prosser, *Torts, págs.* 860, 864–6. Véase *Fonseca* v. *Oyola*, 77 D.P.R. 525, (1954). Y eso fué exactamente lo que ocurrió aquí.

La próxima cuestión es si el demandante tiene derecho a daños por calumnia. Como ya se ha indicado, los hechos en cuanto a este punto son los siguientes: El demandante, Wesley y Olsip caminaban hacia la oficina donde Wesley y el otro agente del *F.B.I.* iban a llevar a cabo la investigación. Olsip, en presencia de Wesley, señaló hacia el demandante y dijo: "This is the only way to stop pilferage." Imputarle pillaje a una persona es acusarle de la comisión de un delito, que es calumnioso *per se* bajo nuestro estatuto. Sec. 3 de la Ley Estableciendo una Acción por Libelo y Calumnia, Código de Enjuiciamiento Civil, ed. 1933, pág. 308; *Díaz* v. *P. R. Ry., Lt. & P. Co.*, 63 D.P.R. 808, 811, y casos citados; *Moraza* v. *Rexach Sporting Corp.*, 68 D.P.R. 468, 471, y casos citados. ¿Pero fué la manifestación de Olsip una imputación de que el demandante había cometido un delito? Una manifestación que se alega es calumniosa debe ser examinada en el contexto de todas las demás circunstancias. *Moraza* v. *Rexach Sporting Corp.*, supra, págs. 471–2; Prosser, supra, pág. 790. Debe recordarse que en ningún momento—ya fuere antes, durante o después de la investigación en la oficina en el muelle—ni Olsip, ni Fortunatti ni ningún otro funcionario de la demandada acusó al demandante o a persona otra alguna de hurto o de algún otro delito. Por el contrario, los autos demuestran que una vez que surgió la cuestión sobre si se había cometido algún delito, Fortunatti y Olsip—sin acusar a nadie—inmediatamente se comunicaron con los agentes del *F.B.I.*, quienes llevaron a cabo su propia investigación y luego radicaron una denuncia enteramente por su propia cuenta. Es difícil por consiguiente creer que la manifestación de Olsip al efecto de que "This is the only way to stop pilferage" constituyera una imputación de que el demandante había cometido un delito. Tal interpretación

sería enteramente inconsistente con todo lo demás que Olsip y Fortunatti dijeron e hicieron durante el incidente. Olsip hablaba de acabar con el pillaje en los muelles, asunto de suma importancia para la demandada y para todas las compañías marítimas.(¹) Y Olsip dijo "ésta" es la única forma de acabar con tal pillaje. ¿A qué se refería Olsip cuando usó el pronombre un tanto ambiguo de "ésta"? Nos parece que se refería a lo que iba a dar comienzo: una inmediata y vigorosa investigación del *F.B.I.*, en el lugar de los hechos, de circunstancias que parecían sospechosas. Es cierto que Olsip señaló hacia el demandante. Pero éste no podía objetar razonablemente si se investigaba a él y a todas las otras personas envueltas en el asunto. En verdad, él prontamente asintió a ello. Por tanto no podemos decir que bajo las circunstancias de este caso el demandante probó mediante la preponderancia de la prueba que los empleados de la demandada lo calumniaron imputándole la comisión de un delito. En consecuencia nunca llegamos a la cuestión de si la manifestación de Olsip, hecha solamente a un funcionario federal, era condicionalmente privilegiada. *Cf.* sec. 4, par. 3 de la Ley Estableciendo una Acción por Libelo y Calumnia; *Díaz* v. *P. R. Ry., Lt. & P. Co.*, supra, pág. 816; *Irizarry* v. *Porto Rico Auto Corporation*, 60 D.P.R. 1.

■ Aun cuando el tribunal sentenciador nada dice con respecto al arresto ilegal en sus conclusiones de derecho, sus conclusiones de hechos contienen una manifestación al efecto de que ". . . la actuación de los empleados de la demandada culminó en la calumnia, el arresto y la prisión ilegal del demandante." En cuanto a la cuestión del arresto ilegal, hemos visto que los empleados de la demandada no tuvieron intervención ni en la denuncia ni en el arresto. La orden de arresto fué expedida como resultado de la denuncia radicada

(¹) Véase *Junta Re'aciones del Trabajo* v. *N. Y. & P. R. S/S Co.*, 69 D.P.R. 782, 801, citando *Findings and Resolutions of the Grand Jury of the District Court of the United States for Puerto Rico, In re: Investigation of Thefts and Pilferage from Interstate Shipments*, radicado el 1 de noviembre de 1944.

por Wesley, el agente del *F.B.I.*, quien también condujo la investigación. La denuncia fué luego archivada a solicitud del Fiscal Federal, quien aparentemente concluyó, como ya se ha indicado, que en ausencia del demandante se habían cargado en el camión 10 latas adicionales debido a un cálculo erróneo hecho de buena fe por Quiñones, el dueño del camión. Por consiguiente, quizás Wesley actuó precipitadamente—y quizás injustificadamente—al radicar la denuncia y obtener la orden de arresto. Pero su conducta a ese respecto no puede ser imputada a los empleados de la demandada que ni lo solicitaron ni lo instigaron. *Turner* v. *Mellon*, 257 P.2d 15 (Cal., 1953; *cf*. VI Ala.L.Rev. 325.

*La sentencia del Tribunal Superior será revocada y se dictará nueva sentencia declarando sin lugar la demanda.*

El Juez Asociado Sr. Belaval disintió.