# 2001 DTA 156

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**

CANDIDO LUNA COLON
Apelado

v.

JOSE LUIS GONZALEZ, ET ALS
Demandados

E.M.I. EQUITY MORTGAGE, INC. ET ALS
Apelantes

Núm. KLAN-2000-00528

San Juan, Puerto Rico, a 26 de abril de 2001

Panel integrado por su Presidente, el Juez Soler Aquino,
y los Jueces Colón Birriel y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El apelado Cándido Luna Colón (en adelante Luna Colón), presentó demanda contra varios codemandados en el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante T.P.I).

En síntesis, alegó que el 31 de marzo de 1995, contrató con José Luis González (en adelante González) y Constructora San Conrado, Inc. (en adelante Constructora) la construcción de una casa en Arroyo. Que la fecha de entrega se acordó para el 8 de septiembre de 1995. El precio de venta sería la cantidad de cuarenta y cinco mil dólares ($45,000.00). Equity Mortage, Inc., quien es una corporación privada creada bajo las leyes del Estado Libre Asociado, con capacidad para demandar y ser demandada, brindaría el financiamiento. Que expirada la fecha de entrega sin que ésta se llevara a cabo, Luna Colón continuó pagando alquiler en una casa arrendada mientras realizaba gestiones con González y el Gerente de Equity Mortgage, Inc., Ramón Crespo (en adelante Crespo) para que terminaran la suya. Continuó Luna Colón alegando que el 24 de mayo de 1996, Crespo lo indujo a firmar una escritura con garantía hipotecaria, aun cuando a la estructura le faltaban las instalaciones eléctricas, las sanitarias, parte de la cerámica del piso, el pozo séptico y los permisos de la Administración de Reglamentos y Permisos (en adelante A.R.P.E.) y de la Autoridad de Energía Eléctrica (en adelante A.E.E.), con la promesa de que en dos (2) semanas la casa sería terminada y garantizando que podría ocuparla en ese tiempo. Continuó Luna Colón alegando que Equity Mortgage, Inc. suministró información incorrecta sobre las condiciones de la casa a los fines de que ésta cualificara para un préstamo hipotecario garantizado por el U.S. Department of Housing and Urban Development. Que al así actuar, Equity Mortgage, Inc. faltó al deber que le impone la ley como corredor hipotecario al no proteger los intereses de su cliente Luna Colón. Que la cantidad de la hipoteca fue de cincuenta y dos mil setenta y cinco dólares ($52,075.00), de los cuales los codemandados Equity Realty Group recibieron la cantidad de cuarenta y cuatro mil dólares ($44,000.00). El codemandado Equity Mortgage, Inc. retuvo mil dólares ($1,000.00) para terminar un pozo séptico. Continuó alegando Luna Colón en la demanda, que los socios de Equity Realty Group y José A. Torres González (en adelante Torres González), se apropiaron ilegalmente del pago de cuarenta y cuatro mil dólares ($44,000.00) hecho por el demandante, impidiendo con esa acción la existencia de recursos para terminar la construcción. Por último, en la demanda se reclamaron daños por el pago de renta de una casa alquilada, por el pago de la hipoteca de la casa que no se ha terminado de construir, por los gastos de reparación de un vehículo utilizado para trasladarse al lugar donde vivía alquilado Luna Colón, por el pago de teléfono celular que tuvo que alquilar por no existir línea telefónica donde estaba viviendo, y por sufrimientos y angustias mentales.

Luego de varios incidentes procesales interlocutorios, el juicio en sus méritos se celebró el 11 de agosto de 1999.

## II

El 24 de febrero de 2000, el T.P.I. emitió sentencia en el caso. Resolvió que Luna Colón interesaba construir una casa en un solar de su propiedad cuando escuchó una promoción de casas "*Mi Retiro*" y llamó al teléfono que se indicaba. Le contestó un empleado de Equity Mortgage, Inc., quien lo refirió a González y le indicó que ellos le conseguirían el financiamiento. González acordó la entrega de la casa para el 8 de septiembre de 1995 y se estableció el precio en cuarenta y cinco mil diez dólares ($45,010.00) dólares. El solar de Luna Colón se hipotecó a favor de Equity Mortgage Realty Group en garantía del pago del precio. La cantidad del préstamo hipotecario ascendió a cincuenta y nueve mil ochocientos cincuenta dólares ($59,850.00). Se indicó, además, en la sentencia que, expirado el plazo establecido para la entrega de la obra, ésta no fue entregada. Entonces, el 24 de mayo de 1996, Crespo, quien era Gerente de Equity Mortgage, Inc., indujo a Luna Colón a firmar una escritura (sic) con garantía hipotecaria a pesar de que sabía que la casa no estaba terminada por faltarle las instalaciones eléctricas y sanitarias, parte de la cerámica del piso, los gabinetes de cocina, el pozo séptico y los permisos de A.R.P.E. y de la A.E.E., con la promesa de que en dos (2) semanas los trabajos serían terminados. Continuó el T.P.I. expresando en su sentencia, que Torres González es presidente de la codemandada Equity Mortgage, Inc. y a la vez es socio de Equity Realty Group. Que las oficinas de esta última radican en un local propiedad de Torres González, el cual no cuenta con servicio telefónico, de agua, ni luz y tampoco tiene empleados. Según la sentencia del T.P.I., previamente González había obtenido que Equity Realty Group S.E. le proveyera un fondo de operación de cien mil dólares ($100,000.00) para la construcción de casas. Que el 28 de mayo de 1996, Equity Realty Mortgage, Inc. emitió un cheque por la cantidad de cuarenta y cuatro mil dólares ($44,000.00) a favor de Equity Realty Group y ese mismo día esta última depositó el cheque en su cuenta. Que la casa no se entregó en la fecha acordada porque no existían fondos para que González terminara la construcción según los términos del contrato entre éste y el demandante. Equity Realty Group cesó su relación con González y no le proveyó los recursos económicos necesarios para cumplir con los acuerdos del contrato. Determinó el T.P.I. que los codemandados Torres González, Equity Mortgage y Equity Realty Group no produjeron evidencia de que le pagaron a González, ni de que le adelantaron dinero durante la construcción de la casa de Luna Colón. Que Luna Colón confió en las promesas de Crespo, Gerente de Equity Mortgage, y accedió a firmar la hipoteca el 24 de mayo de 1996, de una casa que aún no estaba terminada. Que fue en noviembre de 1997 que Luna Colón pudo ocupar su nueva casa. Según determinado por el T.P.I., desde la firma de las escrituras en mayo de 1996, hasta noviembre de 1997, Luna Colón tuvo que pagar doscientos dólares ($200.00) mensuales por una casa alquilada, la misma cantidad por un teléfono celular por razón de su trabajo como policía que le requería estar disponible en todo momento y porque en la vivienda rentada no había línea telefónica; igual cantidad por concepto de gasolina y cuatrocientos treinta y seis dólares ($436.00) mensuales de la hipoteca de su nueva casa. Concluyó el T.P.I. que durante todo este tiempo Torres González, Equity Mortgage, Inc., Equity Realty Group y Crespo rehusaron aceptar responsabilidad por lo acontecido. Además, que de la cantidad desembolsada de la hipoteca de cincuenta y dos mil setenta y cinco dólares ($52,075.00), Equity Realty Group recibió cuarenta y cuatro mil dólares ($44,000.00) y Equity Mortgage, Inc. retuvo mil dólares ($1,000.00) para terminar el pozo séptico. El remanente del préstamo lo utilizó Luna Colón para el pago de sus deudas personales, gastos y comisiones. Concluyó el T.P.I. que, ante La falta de dinero que enfrentaba González Crespo habló con el propietario de Patillas Lumber Yard para que le otorgara una línea de crédito y ésta así lo hizo. Cuando González no le pagó la deuda a Patillas Lumber Yard, Equity Realty Mortgage, Inc. pagó por éste casi la totalidad, excepto aproximadamente cuatro mil dólares ($4,000.00). En sus conclusiones de derecho, el T.P.I. expresó que "*llegamos a la conclusión que los demandados deben responder solidariamente*". ■ Por otra parte, bajo el título de SENTENCIA condenó "*a la demandada*" a pagar a la demandante la suma de quince mil dólares ($15,000.00) más las costas y dos mil dólares ($2,000.00) en concepto de honorarios de abogado. Por último, declaró no ha lugar la reconvención presentada por Torres González.

Inconformes, acuden ante nos Equity Mortgage, Inc., Crespo, Nilsa Alvarez Lugo (en adelante Nilsa

Alvarez), la Sociedad Legal de Gananciales compuesta por ambos, Equity Realty Group y Torres González ▉ y señalan la comisión de doce (12) errores por parte del T.P.I.

La parte apelada, Luna Colón, no presentó su alegato, a pesar de que el 9 de febrero de 2001 le concedimos hasta el 15 de marzo de 2001 para ello. Resolvemos sin el beneficio de su comparecencia.

### III

Exponemos.

*"PRIMER ERROR: Incidió el HonorableTribunal de Instancia al concluir que tenía jurisdicción sobre Equity Realty Group, S.E., anotarle la rebeldía y dictar sentencia en su contra."*

Hemos examinado el expediente del caso en instancia y en el mismo no consta que se haya expedido, ni diligenciado emplazamiento alguno dirigido a Equity Realty Group S.E. El error fue cometido.

El emplazamiento es el mecanismo procesal mediante el cual se le garantiza a una persona el derecho a ser oído, al notificarlo o informarle de la existencia de un pleito en su contra, de forma tal que comparezca si así lo desea, para ser oída y aportar prueba a su favor. *First Bank of P.R. v. Inmobiliaria Nacional, Inc.*, **98 J.T.S. 18**, 599, Opinión de 2 de mayo de 1998. Constituye, además, el medio por el que los tribunales adquieren jurisdicción sobre la persona del demandado para adjudicar los derechos de éste. *Pagán v. Rivera Burgos*, 113 D.P.R. 750, 754 (1983). Es por ello que *"una sentencia dictada sin tal notificación y oportunidad carece de todos los atributos de una determinación judicial; es una usurpación y opresión judicial y nunca puede ser sostenida donde la justicia se administra justicieramente."* J. Cuevas Segarra, *Práctica Procesal Puertorriqueña,* Vol. II, Procedimiento Civil, San Juan, **Publicaciones J.T.S.**, 1985, pág. 32. Toda sentencia o resolución dictada por un tribunal sin jurisdicción sobre la persona, es inexistente o nula en cuanto a los hechos que en ella se pretendieron litigar. *Sucn. Pacheco Otero v. Eastern Associates, Inc.*, 135 D.P.R. 701, 709 (1994).

*"SEGUNDO ERROR: Cometió error el Honorable Tribunal de Instancia al determinar como cuestión de hecho que el codemandado Ramón Crespo indujo al demandante a firmar una escritura con garantía hipotecaria aun cuando la estructura no estaba alegadamente terminada."*

De la página dos (2) de la exposición narrativa de la Prueba consta que Luna Colón declaró:

*"...Como al otro día me llama y me dice: Luna el viernes, vente que vamos a firmar la escritura. Le digo, Crespo la casa mía no está terminada y me dice: no es problema porque si tú firmas yo le voy a conseguir el dinero a González y ya me comprometió (sic) a mí que dentro de 2 semanas, te va a entregar la casa. Porque González está apretado y yo lo quiero ayudar y si no es así tú tienes 3 días laborables después que tú firmas la escritura para confirmar o rechazar la escritura. Y yo le digo mira, yo te voy a firmar la escritura con una condición y te voy a pedir, después que yo firme la escritura tú ve a mi casa, chequeate (sic) a ver que (sic) le falta a mi casa...".*

En base a lo expuesto anteriormente, concluimos que el error alegado no fue cometido. La determinación de hechos del T.P.I. tiene base en la prueba presentada durante el juicio. Cuando existe conflicto entre las pruebas, corresponde al juzgador de los hechos dirimir ese conflicto. *Sanabria v. Sucn. González*, 82 D.P.R. 885, 996 (1961).

Un tribunal apelativo no intervendrá con las determinaciones de hechos del tribunal apelado en ausencia de pasión, prejuicio o error manifiesto de su parte. *Héctor López Vicil v. ITT Intermedia, Inc.*, **97 J.T.S. 42**, 838, Opinión de 4 de abril de 1997. De la prueba desfilada surge que Crespo indujo a Luna Colón a firmar la escritura aun cuando éste le informó que la casa no estaba terminada.

*"TERCER ERROR: El Honorable Tribunal de Instancia no tuvo prueba ante sí de que las oficinas de Equity Realty Group, S.E. radican en un local propiedad de José A. Torres González el cual no cuenta con servicio telefónico, de agua ni de luz y tampoco tiene empleados."*

El error alegado fue cometido. Nada existe en los autos del caso que permitiera al T.P.I. hacer esa determinación de hechos. En base a la norma de derecho anteriormente citada, en esta oportunidad entendemos que se cometió error manifiesto por parte del T.P.I. Sin embargo, el mismo no es un error perjudicial en el sentido de que conlleve la revocación de la sentencia.

*"CUARTO ERROR: Incidió el Honorable Tribunal a quo al concluir como cuestión de hechos que la obra no se entregó en la fecha acordada, porque no existían fondos para que el Ingeniero (sic) José L González la terminara."*

De la exposición narrativa de la prueba ya citada, se puede concluir el hecho aquí impugnado. Además, de la prueba surge que Luna Colón declaró:

*"...Posteriormente me encuentro a González. Me dice 'mira necesito chavos' le digo ¿chavos para qué? Para terminarte la casa. Y digo, pero si yo firmé una escritura y Crespo va a darte chavos a ti. No, Crespo se me quedó con el dinero y ahora yo no tengo chavos...".*

El error alegado no fue cometido. No hay duda de que existe base en la prueba presentada para llegar a la determinación de hechos que aquí se pretende impugnar.

*"QUINTO ERROR: Erró el Honorable Tribunal de Instancia al concluir como cuestión de hechos que los empleados y oficiales de Equity Mortgage tenían conocimiento de que la estructura aún no estaba terminada."*

El error no fue cometido. De la exposición narrativa de la prueba consta que Crespo era el Gerente de Equity Mortgage en Guayama y que Luna Colón declaró:

*"Crespo me dice: el jueves puedes venir en confianza porque yo fui a tu casa con el Sr. Oscar Rodríguez del (sic) Patilla Lumber y el Ingeniero José Luis González. Oscar Rodríguez va a suplir todos los materiales que le faltan a tu casa. González te va a construir y yo soy responsable, yo le voy a pagar a Oscar Rodríguez."*

Esa declaración establece claramente que los oficiales de Equity Mortgage sabían que la estructura aún no estaba terminada.

*"SEXTO ERROR: Erró el Honorable Tribunal de Instancia al concluir como cuestión de hechos que el co-demandado Ramón Crespo habló con Oscar Rodríguez de Patillas Lumber Yard para que le diera una línea de crédito al Ing. José L. González."*

El error no fue cometido. Así consta de la parte de la exposición narrativa citada en la discusión del quinto error. Además, de la exposición narrativa consta que Oscar Rodríguez declaró que se reunió con Crespo y con González en las oficinas de Equity Mortgage. Allí, los últimos le dijeron a Oscar Rodríguez que iban a obtener bastantes materiales de construcción y éste preguntó que quién le garantizaba el dinero. Crespo le contestó que Equity Mortgage y Oscar Rodríguez dijo que si era así, él fiaba la cantidad que fuese necesaria.

*"SEPTIMO ERROR: No existe en el récord evidencia de una relación empresarial entre el Ingeniero José Luis González, Equity Mongage Inc., Equity Realty Group, S.E., José A. Torres González y Ramón Crespo para imponer responsabilidad solidaria."*

El error no fue cometido. Según la exposición narrativa, Crespo declaró que era empleado de Equity Mortgage. Un día, llegó González a su residencia y le presentó la idea que tenía de construir casas para lo cual

necesitaba un inversionista o un banco que le facilitara los fondos. Crespo le hizo una cita con Torres González, que era su jefe y el presidente de Equity Mortgage. Luego de discutir entre ellos la idea de González, entre éste y Crespo estipularon hacer un tipo de negocio para financiar estas casas. De ahí surgió Equity Realty Group.

Por su parte, Torres González declaró que es Presidente de Equity Mortgage y como tal dirige todos los asuntos de la corporación. En el caso de Luna Colón, le otorgaron un préstamo hipotecario para refinanciar. [3]

También declaró que Equity Mortgage emitió el cheque, ▮ objeto del refinanciamiento, a favor de Equity Realty Group porque ésta era la que le proveía los fondos a González para la construcción de las casas. Torres González, además de ser el Presidente de Equity Mortgage, es socio principal de Equity Realty Group.

Como bien determinó el T.P.I., Luna Colón contrató con González para que este último le construyera una casa que sería entregada el 8 de septiembre de 1995.

*"OCTAVO ERROR: Determinar como cuestión de hechos que LOS APELANTES incurrieron en culpa o negligencia por los cuales le deban responder al apelado."*

El error no fue cometido. ▮

Alega Torres González que él no tenía obligación alguna con Luna Colón. Lo cierto es que Torres González es el socio principal de Equity Realty Group y que no existe en los autos del caso evidencia alguna demostrativa de que dicha entidad tenga personalidad jurídica distinta a la de sus socios. Por tanto, Torres González responde, en su carácter personal, pues a pesar de haber recibido cuarenta y cuatro mil dólares ($44,000.00), producto de la hipoteca otorgada por Luna Colón a favor de Equity Mortgage, Inc., no le entregó dinero a González para que éste pudiera terminar la construcción de la residencia de Luna Colón.

*"NOVENO ERROR: La partida de $15,000.00 adjudicada al demandante-apelado es exagerada y no se sostiene por la prueba."*

En la discusión de este error se alega que en la sentencia no se informa cómo se llegó a la suma de quince mil dólares ($15,000.00) en daños. Pero lo cierto es que en la página tres de la sentencia, ▮ el T.P.I. concluyó que Luna Colón, desde mayo de 1996 hasta noviembre de 1997, pagó: doscientos dólares ($200.00) mensuales por la casa alquilada donde residía en el Barrio Carite de Guayama, igual cantidad mensual por concepto de teléfono celular, pues en el área no había línea telefónica, idéntica suma mensual en gasolina y cuatrocientos treinta y seis dólares ($436.00) mensuales de hipoteca sobre la residencia que no le habían entregado.

La suma de todos esos pagos asciende a dieciocho mil seiscientos cuarenta y ocho dólares ($18,648.00).

Sin embargo, de la exposición narrativa de la prueba no surge evidencia alguna de prueba presentada relacionada a gastos de gasolina. Procede entonces eliminar los daños concedidos por ese concepto. Los mismos ascienden a tres mil seiscientos dólares ($3,600.00). Significa que aún así, Luna Colón probó daños por quince mil cuarenta y ocho dólares ($15,048.00)

En la discusión de este error se continuó alegando que los cuatrocientos treinta y seis dólares ($436.00) mensuales que Luna Colón tuvo que pagar de la hipoteca de la casa, no puede ser utilizada para evaluar su compensación, ya que así hacerlo permitiría un enriquecimiento injusto. Esta alegación no fue discutida, ni fundamentada. Por tanto, determinamos que no se cometió el error señalado. La sola alegación de un error, que luego no se fundamenta o discute, no debe ser motivo para revisar, modificar o de alguna manera cambiar una decisión del tribunal apelado. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 165 (1996).

*"DECIMO ERROR: Erró el Honorable Tribunal de Instancia al condenar a LOS APELANTES a pagar*

*$2,000.00 de honorarios de abogado en ausencia de una determinación de hechos de temeridad."*

La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), establece que el tribunal deberá imponerle el pago de una suma por concepto de honorarios de abogado a cualquier parte que haya procedido con temeridad o frivolidad. No obstante el tribunal no haya formulado una conclusión expresa a esos efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada. *Luz M. Rivera Rodríguez et al v. Tiendas Pitusa, Inc.*, **99 J.T.S. 107**, 1246, Opinión de 28 de junio de 1999.

El error alegado no fue cometido.

*"UNDECIMO ERROR: Erró el Honorable Tribunal de Instancia al no hacer determinaciones de hechos y conclusiones de derecho respecto a las demandas contra co-parte."*

El artículo 1098 del Código Civil, 31 L.P.R.A. sec. 3109, dispone que: *"El pago hecho por uno de los deudores solidarios extingue la obligación. El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses del anticipo."* La anterior disposición establece que una vez un deudor solidario realiza el pago en proporción mayor a la responsabilidad que le corresponde, surge a su haber un crédito, que no es otra cosa que el derecho a reclamar la cuantía satisfecha en exceso de su responsabilidad objetiva. El nacimiento de esta causa de acción ha sido denominada de contribución, de nivelación, de reembolso o de regreso. *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 63 (1985); *Soc. de Gananciales v. Soc. de Gananciales*, 109 D.P.R. 279, 282 (1979). Este derecho de nivelación tiene su fundamento en la equidad y es de carácter sustantivo. *García v. Gobierno de la Capital*, 72 D.P.R. 138, 149 (1951). Con respecto al derecho de nivelación, comenta Puig Peña: *"Satisfecha la obligación por un deudor solidario, queda ahora, en méritos de justicia, por repartir la carga entre los demás..."*. Puig Peña, Federico, *Compendio de Derecho Civil Español, Obligaciones y Contratos*, Tercera Edición, Tomo III, 1976, pág. 90. Todos los deudores están obligados a pagar, cada uno, la totalidad de lo adeudado. La prestación de cada deudor es una sola: la totalidad de lo adeudado, y el acreedor tiene, frente a cada deudor, un derecho de elección, pudiendo dirigirse contra cualquiera de los deudores solidarios, o contra todos ellos simultáneamente. *Soc. de Gananciales v. Soc. de Gananciales, supra*, pág. 283. Esta acción de nivelación puede ser ejercida mediante la interposición de una demanda en pleito separado o dentro del pleito principal dentro del cual se reconoció, por sentencia, la existencia de la deuda. *Id.*, pág. 283.

Tanto Equity Mortgage, Inc. como Ramón Crespo y Torres González, presentaron demandas contra coparte en la cual solicitaron que de serles ellos responsables a Luna Colón, de igual forma le serían responsables a ellos González, su esposa, la sociedad de bienes que componen y otros, por su culpa y/o negligencia. En otras palabras, presentaron demandas contra coparte de nivelación. Para que esa demanda prospere, se le requiere como primer elemento que un deudor solidario haya realizado un pago en proporción mayor a la responsabilidad que le correspondía. Eso no ha sucedido en el caso ante nuestra consideración. Por tanto, el T.P.I. no tenía que formular determinaciones de hechos, ni de derecho, con respecto a las demandas contra coparte.

*"DUODECIMO ERROR: Erró el Honorable Tribunal de Instancia al declarar NO HA LUGAR la reconvención por libelo y calumnia de José A. Torres contra el Demandante, en ausencia de determinaciones de hechos y conclusiones de derecho y contrario a la prueba desfilada y no controvertida."*

En relación a la reconvención presentada por Torres González contra Luna Colón por daños y perjuicios por difamación, la cual fue declarada no ha lugar en la sentencia emitida por el T.P.I., entendemos que no tenía que ser fundamentada con otras determinaciones de hechos. La reconvención alegó que Luna Colón publicó en más de una (1) ocasión que Torres González se apropió ilegalmente de los cuarenta y cuatro mil dólares ($44,000.00) pagados por Luna Colón mediante el préstamo hipotecario. En la página tres (3) de la sentencia emitida, el tribunal apelado concluyó, como cuestión de hecho, que Equity Realty Group, cuyo socio principal

era Torres González, luego de recibir el dinero, no le proveyó los recursos económicos necesarios a González para que pudiera cumplir con los términos del contrato. Entendemos que esta conclusión de hechos es suficiente para fundamentar el declarar no ha lugar la reconvención.

Se entiende por libelo, la difamación maliciosa que públicamente se hace en contra de una persona. 32 L.P.R.A. sec. 3142. █

Se entiende por calumnia, la publicación falsa o ilegal que impute a una persona la comisión de un hecho constitutivo de delito o tienda a perjudicarle con relación a sus negocios. 32 L.P.R.A. sec. 3143.

La suficiencia de la prueba para establecer la existencia de malicia real, y de la negligencia en los casos en que estén envueltas personas privadas, es cuestión estrictamente de derecho. *Villanueva v. Hernández Class*, 128 D.P.R. 618, 644-645 (1991). No es suficiente para establecer una acción por libelo que la difamación maliciosa se hase en la alegación contenida en una demanda. Máxime si el tribunal sentenciador determinó, como en este caso, que Torres González, luego de recibir el dinero, no le proveyó a González la cantidad que éste necesitaba para concluir la obra. Bajo estos hechos, el que se alegara que Torres González se apropió ilegalmente del dinero para poder finalizar la construcción, no se puede interpretar como una imputación de que Torres González había cometido un delito. Una manifestación que se alega es calumniosa, debe ser examinada en el contexto de todas las circunstancias. *Rodríguez v. Waterman Dock Co.,* 78 D.P.R. 738, 742 (1955).

Nuevamente repetimos que en ausencia de pasión, prejuicio o error manifiesto, un tribunal apelativo no intervendrá con las determinaciones de hechos del tribunal apelado.

El error alegado no fue cometido.

## IV

Por los fundamentos antes expuestos, se modifica la sentencia revisada a los efectos de revocar la parte en la que le impone responsabilidad a Equity Realty Group, quien nunca fue emplazada. Así modificada, se confirma en todos sus otros extremos.

Lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 156

1. A nuestro juicio, la determinación de solidaridad se debe entender como que está incluida en la parte dispositiva de la sentencia.

2. Todos representados por el Lcdo. Alejandro Oliveras Rivera.

3. Para refinanciar el préstamo con garantía hipotecaria previamente otorgado a favor de Equity Realty Group.

4. Por la cantidad de cuarena y cuatro mil dólares ($44,000.00).

5. En relación a Equity Realty Group, la discusión del error resultaría académica, pues ya determinamos que el tribunal nunca adquirió jurisdicción sobre dicha parte.

6. Página 56 del apéndice.

7. La definición contiene otros elementos que no son pertinentes señalar en esta ocasión.