FRANCISCO ESCODA, HIJO, demandante y recurrido, *v.* HULL DOBBS CO. OF PUERTO RICO (COURTESY MOTORS OF PUERTO RICO) KEN LANCASTER, JOSÉ CRUZ VÉLEZ Y JULIO MEJÍA LIZARDO, demandados y recurrentes.

*Número:* R-70-78      *Resuelto:* 9 de diciembre de 1971

*Orlando J. Antonsanti* y *Ernesto González Piñero,* abogados de los recurrentes; *Dapena Dapena & Toro,* abogados del recurrido.

PER CURIAM: En una acción civil por persecución maliciosa, el Tribunal Superior, Sala de San Juan, dictó sentencia condenando a la parte demandada-recurrente a pagar al recurrido la suma de $2,000.00 en concepto de daños y perjuicios, más las costas y $500.00 para honorarios de abogado.

Para el año 1962, el recurrido Francisco Escoda, hijo, trabajaba como vendedor de automóviles, en Santa Rosa Plaza de Bayamón para la firma "Courtesy Motors of P.R." hoy "Hull Dobbs Co. of P.R." Los co-demandados José Cruz Vélez y Julio Mejía Lizardo, eran Gerente General y Gerente

Commercial y Contralor respectivamente de dicha firma. Los únicos autorizados para firmar órdenes de compra eran los gerentes, entre los cuales figuraban los codemandados ya mencionados y el señor Marcelino Rivera, gerente de la oficina de Santa Rosa Plaza.

En el proceso de revisión de las facturas al cobro, apareció una orden oficial de compra de la corporación firmada por Escoda, hijo, y en virtud de la cual había comprado a nombre de la corporación piezas de automóviles por valor de $66.00.

Inmediatamente Escoda, hijo, fue despedido de su empleo mediante carta de 10 de abril de 1962 que lee:

"Sr. Francisco Escoda, Jr.
Caguas, P.R.
Señor:

Deseo confirmarle el despido, como vendedor, que le hiciera verbalmente su Jefe inmediato, el Sr. Marcelino Rivera, Gerente de nuestra Sucursal de Bayamón, por la causa de usted sustraer y firmar maliciosamente una orden de compra oficial de esta Corporación con la cual obtuvo piezas por el valor de $66.00, sin tener autorización ni poder para hacerlo.

Atentamente,

(Fdo.) José Cruz Vélez
Gerente General

JCV/lm
cc: Seafarers, P.R. Division
    Welfare Plan."

Escoda, hijo, era Presidente de una Unión o hermandad de vendedores y como tal tenía que intervenir y resolver problemas que surgieran entre los vendedores y la gerencia de la compañía demandada.

A raíz de este despido, los gerentes Cruz Vélez y Mejía Lizardo pidieron a la detective que practicara una investigación de los hechos. De ambos y de otros empleados de la Corporación demandada, el detective Otero recibió información

"al efecto de que Escoda sustrajo y firmó una orden oficial de la corporación sin estar debidamente autorizado para ello, adueñándose de la propiedad comprada, la que usó en su propio beneficio."

Con esta información el detective Otero juró una denuncia contra Escoda por la comisión de un delito de falsa representación, imputándole que ". . . en la fecha, hora y sitio que se indica arriba, se personó al negocio del Sr. Juan M. Nazario, donde compró a nombre del Sr. Julio Mejía Lizardo piezas de automóviles . . . por lo que firmó un recibo a nombre del querellante sin estar autorizado por éste para hacer transacciones comerciales y adueñándose de la propiedad la que usó en su propio beneficio y lucro personal y defraudando así al perjudicado con engaño en sus legítimos intereses."

Luego de determinarse causa probable en su contra, Escoda fue arrestado y encarcelado hasta que horas después prestó una fianza de $600.00.

La orden de compra se hizo a nombre de Courtesy Motors pero fue firmada, lo mismo que la factura, por Escoda con su propio nombre.

Escoda fue absuelto de la denuncia de falsa representación y luego instituyó la acción que motiva este recurso.

El tribunal sentenciador, entre otras conclusiones y con base para ello en la prueba, formuló la siguiente:

"4.—El día 27 de marzo de 1962 el demandante Francisco Escoda, hijo, necesitó comprar unas piezas de automóvil e hizo uso de una orden de compra oficial de la corporación demandada, habiendo en dicha orden escrito una relación de piezas a ser compradas y habiendo suscrito dicha orden con su propia firma. Días antes, y específicamente el 22 de marzo de 1962 el demandante fue autorizado por su gerente directo, Marcelino Rivera para realizar la compra de un motor Buick 55 con el descuento que le concedían a la Courtesy Motors (Exh. 3-Dte.) para ser instalado en el vehículo que Escoda le vendió a un cliente en Caguas. Por razones que desconocemos, Escoda en vez de comprar dicho motor, optó por comprar ciertas piezas que necesitaba el motor de

dicho vehículo, utilizando el procedimiento antes mencionado. (Exh. 2 Demandante)."[1]

De los hechos encontrados probados por el tribunal de instancia se infiere que la compra realizada por Escoda de piezas para el motor de automóvil, en vez de comprar el motor en sí, resultaba beneficioso para Courtesy Motors, y que el demandante Escoda no tuvo la intención de defraudarla, toda vez que tanto la orden de compra como la factura por el valor de las piezas fue firmada por Escoda con su propio nombre.

Estuviera mal o bien denominada la denuncia radicada por el detective Otero, lo cierto es que en ella se alegan los hechos informádosle por los gerentes y otros empleados de la corporación demandada.

No tenemos dudas de que la actuación de la parte demandada, como correctamente resolvió el tribunal sentenciador, fue la causa eficiente de poner en movimiento maliciosamente la maquinaria de la ley para perseguir judicialmente a Escoda. Véase, *Parés* v. *Ruiz*, 19 D.P.R. 342 (1913); *Rivera* v. *Casiano*, 68 D.P.R. 190 (1948); *Jiménez* v. *Sánchez*, 76 D.P.R. 370 (1954).

*Se dictará sentencia confirmando la del Tribunal Superior.*
El Juez Presidente, Señor Negrón Fernández, no intervino.

---

[1] El procedimiento consiste en utilizar las órdenes oficiales de compra de Courtesy Motors.