# 97 DTA 142

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
PANEL I**

IRIS M. COLLAZO VAZQUEZ
Apelada

v.

GRAND WAY CORP., NADEL ABDULLAH AL-KHATIB Y JENNY SALDANA
Apelantes

Núm. KLAN-96-010871

San Juan, Puerto Rico, a 20 de junio de 1997

Panel Sustituto integrado por su Presidenta, Juez Pesante Martínez,
el Juez Colón Birriel y el Juez Rivera Pérez

Pesante Martínez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

# I

El Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Guayama, declaró con lugar una acción en daños y perjuicios por persecución maliciosa incoada por la demandante-apelada, Iris Collazo Vázquez. Mediante el presente recurso de apelación se nos solicita revoquemos la sentencia del foro de instancia por entender que no quedaron  probados la concurrencia de todos los elementos necesarios para que se configurara una acción por persecución maliciosa derivada de procesos criminales.

La demandante, Iris M. Collazo Vázquez, trabajó alrededor de tres años y medio, como vendedora para la demandada, Grand Way Corp. El 3 de junio de 1995, mientras la demandante se encontraba en el probador enganchando una ropa observó cuando la gerente, Jenny Saldaña, pasaba para entrar al baño y cuando salió de éste. Acto seguido, la señora Saldaña la llamó a su oficina para informarle que estaba suspendida por haberle tirado un gancho de ropa y agredirla. En esos momentos en la oficina se encontraban Luis A. Rivera y Jamal Hassan Badrán, empleado y gerente de la demandada, respectivamente.

La demandante leyó el documento en que le informaba que estaba suspendida y negó los hechos narrados en la misma. Esta solicitó hacer un llamada, pero como la señora Saldaña estaba usando el teléfono salió de la tienda y llamó a la policía. Cuando le relató lo sucedido al retén de la Comandancia de la Policía Estatal éste le indicó que no tenía un caso por difamación sino un caso laboral, por lo que le aconsejó que fuera al Departamento del Trabajo. No obstante, la demandante insistió en que quería que un policía acudiera a investigar porque la estaban difamando.

El Policía José G. Ortiz y dos guardias municipales llegaron a la tienda y la demandante le explicó al Policía Ortiz que la señora Saldaña la estaba acusando falsamente de tirarle con un gancho de ropa y agredirla, y que todo eso era mentira. Luego de esto, el Policía Ortiz decidió entrar a la tienda a investigar y cuando salió le informó a la demandante que le iban a someter cargos por agresión simple. La demandante se molestó mucho y le reclamó que si ella fue quien llamó a la policía cómo era posible que la denunciaran. La demandante optó por irse con su cuñada y su sobrino que la estaban esperando.

La demandante atestó que durante la vista del caso criminal la señora Saldaña declaró que el día de los hechos en controversia cuando salía del baño le tiraron un gancho de ropa y cuando ella se volteó vió a la demandante. Inmediatamente fue a informarle de lo sucedido a sus superiores y al señor Hassan. Atestó que Luis A. Rivera presenció los hechos y había aceptado ser testigo de la demandada.

Por el contrario, Luis A. Rivera declaró que la señora Saldaña mentía porque el no había visto a la demandante tirarle ningún gancho. Este dijo que a él le dieron a firmar un documento en blanco en que aparecía como testigo y que le aclararon que aunque le estaban dando un *"warning"* por hablar que no se preocupara que a él no le perjudicaría. ■ En consecuencia, el juez que presidió la vista determinó no causa y archivó la denuncia sometida.

De otra parte, la demandante relató que sus problemas con la señora Saldaña comenzaron cuando la señora Saldaña fue ascendida de empleada a gerente. Esta declaró que en una ocasión se encontraba en la entrada de la tienda hablando de temas relacionados con el trabajo con Luis A. Rivera. Este estaba colocando un cruzacalle, cuando la señora Saldaña lo llamó para que fuera al almacen. Al rato la demandante tuvo que ir al almacen a buscar unas toallas y oyó cuando la señora Saldaña regañaba a Luis A. Rivera por estar hablando con ella. Después de esto le dió un *"warning"* por violar la norma 12 que prohibe que los empleados hablen durante horas laborales con amigos o parientes. En otra ocasión, cuando regresó de sus vacaciones no la dejaron trabajar en la caja porque alegadamente estaban rotando al personal. No obstante, la persona que la sustituyó en la caja durante sus vacaciones se quedó en la caja y ella se tuvo que quedar como vendedora. Esta dijo que Luis A. Rivera le contó que la iban a botar junto a dos empleadas *"viejas"* y que dichas empleadas efectivamente fueron despedidas. También mencionó que Luis A. Rivera le había dicho que la señora Saldaña le pidió que colocara un perfume en su cartera para tener una excusa para poder botarla por apropiación ilegal de mercancía de la tienda. Esta arguyó que a los demás compañeros no les daban *"warning"* por hablar con los otros compañeros y que esto era una manera de presionarla para que renunciara.

La demandante declaró que desde el incidente del 3 de junio de 1995 se sentía bien nerviosa por lo que decidió visitar al Dr. Palés. Este le indicó que debía quedarse un tiempo en su casa para que pudiera descansar. Cuando se venció el término que le recomendó el Dr. Páles, ésta decidió que no podía continuar trabajando junto a la señora Saldaña y presentó su renuncia.

Posteriormente solicitó los beneficios de desempleo. Originalmente se los denegaron, pero al ella relatarles lo sucedido el Departamento del Trabajo reconsideró y concedieron los beneficios. Los demandados apelaron y el Departamento del Trabajo rechazó la apelación.

La demandante reclamó una indemnización de $40,000 por lo daños y perjuicios sufridos a causa de la persecución maliciosa de la que fue objeto. Esta declaró que sufrió mucho y que podía volver a trabajar con la demandada. Aceptó, que encuentra preparada para trabajar en cualquier otro lugar.

La demandante presentó como testigos a Luis A. Rivera, José G. Ortiz y al Dr. Palés. Luis A. Rivera declaró que el 3 de junio de 1995 estaba trabajando en el almacén de la tienda y que la demandante se encontraba en el probador atendiendo una clienta. Al rato vió pasar a la señora Saldaña hacia el baño y luego la vio salir. Al poco tiempo lo llamaron para que fuera a la oficina y le dijeron que le darían un *"warning"* por estar hablando con la demandante y que necesitaban que el fuera testigo de lo ocurrido con la demandante. Declaró que le dieron un documento en blanco y le dijeron que firmara donde decía testigo. En esos momentos se encontraba en la oficina, señora Saldaña y el señor Jamal, ambos gerentes de la demandada. Después de esto, llegó la policía y le pidieron nombre y dirección.

Atestó que en una ocasión estaba al frente de la tienda hablando con la demadante de temas relacionados con el trabajo cuando llegó la señora Saldaña y le pidió que fuera con ella a la parte de atrás y lo regañó por estar hablando con la demandante. Mencionó que lo que tenían con la demandante es una persecución porque a nadie más le daban *"warnings"* por estar hablando y que la señora Saldaña le había mencionado en una ocasión que iban a botar a la demandante junto a otras empleadas. También declaró que en una ocasión la señora Saldaña le pidió que metiera un perfume en la cartera de la demandante para poder botarla.

José G. Ortiz fue el Oficial de la Guardia Municipal que presentó la denuncia. Este declaró que el 3 de junio de 1995 llamaron al retén del Cuartel Municipal de Guayama para hacer una querella por un incidente ocurrido en la tienda Five-to-Five en la calle Calimano de Guayama, Puerto Rico. Al personarse al lugar de los hechos, se encontró con la demandante quien le dió su versión de lo sucedido y luego se dirigió a la tienda para pedir la versión de la otra parte. Cuando oyó la versión de la señora Saldaña decidió que había causa para una agresión simple. Este le insistió a la señora Saldaña que acudiera al cuartel, pero ésta no quiso y le dijo que se iría para su casa. Acto seguido, ésta le mencionó que tenía como testigo a Luis A. Rivera por lo que procedió a anotar su nombre y dirección. Ante estos hechos decidió presentar una denuncia por agresión simple en la Sala de Investigaciones del Centro Judicial de Guayama. Se le preguntó si la señora Saldaña le pidió que retirara la denuncia y contestó que no. Tampoco consideró ir en alzada de la determinación del juez.

El testimonio del Dr. Palés, médico generalista y especilista en emergencias médicas, se circunscribió a explicar porqué le diagnosticó a la demandante un Post Traumatic Stress Disorder e Irritable Bowel Syndrome. Este declaró que la demandante lo visitó el 10 de julio de 1995 y que ésta le relató que se encontraba ansiosa, con falta de apetito, insomnio y diarreas. En ese momento la demandante le mencionó que su estado se debía a un problema que tuvo en su trabajo, éste le recetó *"Sanax"* y le dio una cita para que regresara el 16 de julio de 1995. En la siguiente cita la demandante le mencionó que seguía con las diarreas y él le recomendó que descansara un poco más y que visitara a un psiquiatra. En la vista declaró que la demandante se veía muy bien y que se podía percibir que los síntomas habían desaparecido, Durante el contrainterrogatorio se aclaró que a la demandante se le estaba tratando de *"Irritable Bowel Syndrome"* antes de que ocurrieran los incidentes en controversia.

Como parte de la prueba de la parte demandada declaró Jenny Saldaña, quien actualmente es gerente de dos tiendas de Grand Way Corporation. Esta declaró que el día de los hechos se dirigía al baño cuando vió a la demandante y el señor Rivera hablando y que ésta le preguntó al señor Rivera qué hacía y éste le contestó que organizando los *"Lay Away"*. En esos momentos le dió la espalda a

ambos y sintió un golpe en la espalda y miró hacia atrás y vió a la demandante quien le había tirado con un gancho de ropa. Después de esto, entro al baño y al salir se dirigió inmediatamente a su oficina a informarle a la Gerente de Personal, Awilda Morales, lo que había sucedido y que luego de evaluar la gravedad de lo acontecido decidieron suspenderla por un mes. Atestó que llamó a Luis A. Rivera y que al frente de Jamal Badrán éste dijo que vió cuando la demandante le tiró con un gancho a la señora Saldaña, que eso estaba "camarón" y que la señora Saldaña tenía que tener cuidado con esas mujeres que la odiaban y que no soportaban que ella las mandara. Luego le dieron a leer un "warning" donde se escribió lo antes mencionado y cuando terminó de leerlo lo firmó.

Continuó declarando que le dijeron a la demandante que viniera a la oficina y que ésta entró en actitud negativa, altanera, agitada y agresiva. Que Luis A Rivera le dijo "Iris, tú lo hiciste y es cierto" por lo que la demandante salió de la oficina diciendo que iba a llamar a la policía, pasó por el "counter" de las cajeras, pidió su cartera y se marchó. Al poco tiempo llegó la policía y cuando le dió su versión de los hechos éste decidió que había causa para denunciar a la demandante por agresión simple. Esta le mencionó al policía que no le interesaba denunciarla pero el policía insistía en que presentara la denuncia por su seguridad. Declaró que luego de éste incidente la demandante y su hermano la perseguían.

En relación al "warning" del 25 de abril de 1995, declaró que ésta estaba hablando con Luis A. Rivera en horas laborales desatendiendo a los clientes. También se le preguntó si ella aparecía firmando la denuncia y dijo que no. El día de la vista, según ella, el abogado de la demandante no la dejaba hablar y sólo le permitía contestar si o no a las preguntas.

Como perito de la demandada declaró el psiquiatra, Dr. Luis A. Escabí Pérez. Este explicó que luego de evaluar a la demandante y el Certificado Médico del Dr. Palés, diagnosticó que la demandante lo que tuvo fue un problema ocupacional a causa de un problema en su trabajo. Atestó que no existe evidencia de un desorden o enfermedad emocional. Este concluyó que la demandante no tiene ningún grado residual de incapacidad ni pérdida de funciones fisiológicas generales. Por consiguiente, consideró errado el diagnóstico del Dr. Palés.

La testigo Lilliam Maldonado Ortiz declaró que cuando se dirigía a la tienda vio en la entrada como a siete personas y entre éstas se encontraba la demandante bastante alterada. Declaró que cuando entró en la tienda y preguntó que pasó, Luis A. Rivera le dijo que la señora Saldaña fue agredida por la demandante con un gancho de ropa. Atestó que Luis A. Rivera estaba presente cuando la señora Saldaña le narraba lo sucedido a la policía y que oyó cuando el señor Rivera le decía a la señora Saldaña que tuviera cuidado que esas mujeres le tenía odio y podían seguirla. Declaró también, que la señora Saldaña no tenía interés en presentar la denuncia y que fue el policía el que insistió en que fuera al cuartel para tomarle más datos.

El tercer testigo de la demandada fue el gerente Jamal Hassan Badrán quien declaró que el día de los hechos la señora Saldaña lo llamó para contarle que la demandante la había agredido con un gancho de ropa. Frente a él, la señora Saldaña llamó por teléfono a la Oficina Central y habló con Awilda Morales y al terminar la conversación llamó a Luis A. Rivera. Testificó que le preguntó al señor Rivera qué pasó y que éste le dijo que la demandante había agredido a la señora Saldaña con un gancho y que eso estaba planeado. Inmediatamente hicieron un "warning" y el señor Rivera despúes de leerlo, lo firmó. Declaró que el señor Rivera era un empleado de confianza y que lo consideraba serio e íntegro.

También declaró Awilda Morales, Gerente de Recursos Humanos de Grand Way Corporation, y dijo que ellos utilizan unas normas y reglamentos para poder guiar el comportamiento de su personal. Atestó que el día de los hechos la señora Saldaña la llamó para informarle lo sucedido y que considerando la gravedad de la falta y la violación a las normas de trabajo Núm. 25 decidieron suspender a la demandante por treinta (30) días. Esta mencionó que le dijo a la señora Saldaña que cerrara la tienda y que si deseaba seguir con la denuncia sería en su carácter personal. En relación a la vista en el Departamento del Trabajo ésta declaró que no le permitieron dar su versión de los hechos porque la señora Saldaña no estaba presente y lo que ella declarara sería prueba de referencia. También declaró el tesorero de Grand Way Corporation, Nader Abdullah Al-Khatib, quién mencionó que un día mientras visitaba la tienda la demandante le comentó que no estaba de acuerdo con un

*"warning"* que le había dado la señora Saldaña por estar hablando afuera con el señor Rivera y que éste le contestó que la señora Saldaña tenía autoridad para ello. Atestó que el señor Rivera en ocasiones distintas le dijo que le pareció ver a la demandante llevarse un perfume, pero que no estaba seguro y que la demandante había entrado un día a los probadores con varios pantalones cortos en la mano y que al salir tenía las manos vacías. Este no hizo nada al respecto.

Ante este marco fáctico y luego de sopesar la prueba y adjudicar credibilidad, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la demanda en daños y perjuicios por persecución maliciosa y condenó a los demandados a compensar de forma solidaria a la demandante la suma de $20,000, más las costas, gastos y $2,000 por concepto de honorarios de abogados.

Inconforme con dicha determinación apelan ante nos alegando en síntesis que erró el Tribunal de Primera Instancia al resolver que se cumplieron con todos los requisitos que tienen que concurrir para que se responsabilice a los demandados por persecución maliciosa. Confirmamos la sentencia aunque por distintos fundamentos.

## II

Nuestro ordenamiento jurídico reconoce una acción civil en daños y perjuicios por persecución maliciosa como consecuencia de un pleito criminal. █ En *Parés v. Ruiz,* 19 D.P.R. 342, 346 (1913), se mencionó por primera vez los elementos que tienen que concurrir para que se instituya un pleito bajo esta doctrina. En dicha ocasión se establecieron los siguientes requisitos: █

*"1. Que la parte demandada haya denunciado o instado un proceso criminal contra la parte demandante.*

*2. Que la causa o acción instada haya terminado de forma favorable al demandante.*

*3. Que no existía causa probable y la acción fue instada maliciosamente*

*4. Que la demandante sufrió daños a consecuencia de ello."*

Véase, *Jiménez Alvarez v. Silén Maldonado,* ___ D.P.R. ___ (1992), op. de 30 de junio de 1992, **92 J.T.S. 95**, pág. 9725; *Fonseca v. Oyola,* 77 D.P.R. 525, 528 (1954); *Torres v. Marcano,* 68 D.P.R. 880, 881 (1948).

Recalcamos que si falta alguno de los elementos citados la acción por persecución maliciosa no se puede configurar. *Torres v. Marcano, supra*, 885. A tales efectos, los demandados arguyen, entre otras, que en el caso de autos la parte demandada no fue quien denunció o instó la denuncia por agresión simple. Estamos de acuerdo. Según se desprende de la prueba presentada y del propio testimonio de la parte demandante, ésta fue quién llamó a la policía e insistió en que se personara al lugar de los hechos porque a su entender la estaban difamando. A su vez, el Policía Ortiz declaró que la señora Saldaña no quiso ir al cuartel a presentar la denuncia y que se fue para su casa. Este aceptó que presentó la misma a iniciativa propia porque entendió, luego de escuchar la versión dada por la señora Saldaña, que existían elementos suficientes para denunciar a la demandante de agresión simple. Entendemos, pues, que la demandada se limitó a informar a la policía lo que había acontecido y que fue éste luego de terminar su investigación, quien decidió presentar la denuncia. Al así resolver, tenemos que concluir que falta uno de los elementos esenciales que se deben probar para que proceda una indemnización por persecución maliciosa. Por ende, se cometió el error señalado.

No obstante, la prueba creída por el Tribunal de Instancia demuestra claramente que la demandada hizo unas imputaciones falsas que afectaron la reputación de la demandante por lo que existen elementos suficientes para sostener una reclamación por los daños y perjuicios sufridos a consecuencia de la difamación de la que fue objeto.

De entrada reiteramos que en nuestra jurisdicción, como norma general, un tribunal apelativo no intervendrá con la apreciación de la prueba hecha por el Tribunal de Primera Instancia en ausencia de error manifiesto, prejuicio, pasión o parcialidad. *Orta v. Padilla Ayala,* ___ D.P.R.___ (1995), op. de 8 de febrero de 1995, **95 J.T.S. 21**, pág. 668; *Rodríguez Oyola v. Machado Díaz,* ___ D.P.R. ___ (1994),

op. 3 de junio de 1994, **94 J.T.S. 82**, pág. 12008. No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. Véanse, *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 545 (1984); *Vda. de Morales v. De Jésus Toro,* 107 D.P.R. 826, 829 (1978).

En Puerto Rico la protección del ciudadano contra actos difamatorios o libelosos emana principalmente de la Sec. 8 del Art. II de nuestra Constitución que dispone que toda persona tiene derecho *"a la protección contra ataques abusivos a su honra, a su reputación y a su vida privada familiar". Porto v. Bentley Puerto Rico, Inc. y otros,* \_\_\_ D.P.R. \_\_\_ (1992), op. de 23 de diciembre de 1992, **92 J.T.S. 175**, pág. 10247. Del mismo modo, el Art. 1802, *supra,* y la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902, 32 L.P.R.A. 3141, *et al.,* reiteran la protección contra expresiones difamatorias y aplican cuando sus disposiciones no están en contraposición al citado precepto constitucional. *Ibid.*

El derecho tutelado en una *"acción por difamación y por cuya afección se reclama resarcimiento, lo es la reputación personal del objeto injuriado públicamente (citas omitidas)... A tales efectos, el objeto de la acción en daños por difamación es proveer compensación por el daño a la reputación y la pérdida del buen nombre del injuriado y no el brindar resarcimiento por la ocurrencia de otros tipos de daños como lo podrían ser las angustias emocionales sufridas y la posible interferencia habida con la intimidad del libelado, entre otras". Rodríguez v. El Vocero,* \_\_\_ D.P.R. \_\_\_ (1994), op. de 7 de febrero de 1994, **94 J.T.S. 13**, págs. 11502-11503. De igual manera, aunque más abarcadora, la acción en daños al amparo del Art. 1802 pretende compensar a la demandante por el daño a su reputación al mismo tiempo que resarce al demandante por los sufrimientos y angustias mentales a consecuencia de la publicación libelosa o difamatoria. *Ibid,* pág. 11503. █

Resulta fundamental *"[p]ara que una persona privada prospere en una reclamación por libelo... que establezca que la publicación de una comunicación, que se reputa falsa y difamatoria, le causó daño y que se debió a conducta negligente." Acevedo Santiago v. Western Digital Caribe, Inc., et als.,* \_\_\_ D.P.R. \_\_\_ (1996), op de 21 de marzo de 1996, **96 J.T.S. 42**, pág. 878. Para que se entienda que la expresión difamatoria ha sido publicada solo se tiene que probar que dicha expresión fue comunicada a una tercera persona. █ Es por ello, que la expresiones hechas a la persona difamada no constituye por sí sola el requisito de publicación requerido. *Ibid; Porto v. Bentley Puerto Rico, Inc. y otros, supra.*

Sin embargo, nuestro acervo jurisprudencial establece que si la información públicada se encuentra entre las llamadas *"comunicaciones intracorporativas" la misma podría estar cobijada bajo la doctrina de inmunidad condicional o restringida. Dicha doctriña establece que no importa si la información es falsa o no, si la comunicación fue "hecha de buena fe con relación a un asunto en que el autor tiene un interés o con respecto al cual tiene un deber que cumplir hacia otros". Porto v. Bentley Puerto Rico. Inc. y otros, Ibid,* pág. 10249.

De igual manera, la inmunidad condicional se puede perder si se demuestra que la parte demandada abusó de su privilegio. Esto ocurre cuando se hace la expresión libelosa ante personas que no tienen porqué proteger el interés del autor o de la comunidad; cuando el autor le imparte publicidad excesiva al asunto o cuando el autor tiene motivos impropios. *Porto v. Bentley Puerto Rico. Inc. y otros, Ibid.* A modo de ilustración nuestro Tribunal Supremo ha reconocido que las siguientes expresiones tienen un privilegio condicionado:

Comunicaciones del *"patrono"* a gerentes o supervisores de un empleado despedido, informándoles las razones del despido del empleado; comunicaciones hechas a patronos prospectivos informándoles las razones del despido del empleado; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y empleados de personal (citas omitidas). *Porto v. Bentley Puerto Rico. Inc. y otros, Ibid.,* ratificado en *Acevedo Santiago v. Western Digital Caribe, Inc., et als., supra,* pág. 879.

Como podemos ver, la doctrina del privilegio condicionado se pierde cuando se le comunica a un tercero que no tiene un interés en proteger la información públicada, no es gerente o supervisor del

empleado ni patrono prospectivo. En el caso de marras la señora Saldaña llamó a Luis A. Rivera, Awilda Morales y Jamal Badrán para decirles que la demandante la había agredido al tirarle con un gancho de ropa. Awilda Morales y Jamal Badrán son gerentes de la co-demandada Grand Way Corp, por lo que se podría decir que la expresión difamatoria se encuentra protegida por el privilegio condicionado. No obstante, el señor Rivera es un empleado de la demandada y no hay razones para pensar que éste tuviera algún interés en proteger la información suministrada. Siendo ello así, la demandada abusó de su privilegio y en consecuencia perdió el mismo.

*"No olvidemos que a las expresiones falsas y difamatorias que haga un oficial corporativo respecto a un empleado en particular, de advenir en conocimiento de los restantes empleados de la empresa, afecta la opinión y el respeto que tienen éstos respecto al empleado en controversia".* Porto v. Bentley Puerto Rico, Inc. y otros, supra, pág. 10247.

En resumen, en el caso de autos, el Tribunal de Instancia, luego de adjudicar credibilidad, resolvió que la señora Saldaña, gerente de la demandada, mintió al decir que la demandante le tiró con un gancho de ropa y la agredió. Ello quiere decir que la información que ésta le suministró al señor Rivera era falsa. De igual manera, resolvimos que la expresión difamatoria fue públicada a un tercero que no tenía ningún interés en proteger la comunicación del autor. En consecuencia, la condición para que la comunicación entre el patrono y empleado estuviera condicionalmente privilegiada no se cumplió. Además, la señora Saldaña, pese a que no instigó para que se denunciara criminalmente a la demandante, ésta narró al Policía Ortiz los hechos que constituyen la médula de la difamación.

Por los fundamentos antes expuestos, se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Guayama aunque por otros fundamentos. Mediante la misma se condenó a los demandados a pagar de forma solidaria la suma de veinte mil (20,000) **[5]** más las costas y gastos y dos mil (2,000) en honorarios de abogados. ■

Lo acordó el Tribunal y lo certifica la Señora Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 142

**1.** El 3 de junio se le dio a la demandante un *"warning"* por violar las siguientes normas:

*9". No se podrá atender ningún cliente con paquetes, sugiera con amabilidad que los deje en el "counter". Sea cortés con el cliente. No pierda un cliente por estar hablando.*

*12. No se permiten conversaciones con amigos y familiares dentro del área de trabajo.*

*25. El faltar el respeto al Gerente, la indisciplina e insubordinación ante la Gerencia será motivo de tomar acción disciplinaria; si la misma es de tal magnitud y de carácter tan lesivo que atenta contra el buen nombre y normal funcionamiento de la empresa será motivo de despido."*

**2.** El Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, dispone:

*"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."*

**3.** Véase como ilustración: *Ocasio v. Acalde Mun. de Maunabo,* 121 D.P.R. 37, (1986); *Raldiris v. Levit & Sons of P.R., Inc.,* 103 D.P.R. 778 (1975); *Escoda v. Hull Dobbs Co. of P.R.,* 100 D.P.R. 305 (1971); *Commonwealth Loan Corp. v. García,* 96 D.P.R. 773 (1968).

**4.** Véase también, *Irizarry v. Puerto Rico Auto Corp.,* 60 D.P.R. 1 (1942); *Mulero v. Martínez,* 58 D.P.R. 321 (1941).

**5.** Un Tribunal apelativo no deberá intervenir con la valorización de los daños realizada por el foro de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Agosto Vázquez v. F.W. Woolworth & Co.,* ___

D.P.R. ___ (1997), op. de 13 de mayo de 1997, **97 J.T.S. 56**, pág. 951; *Cotto Morales v. Ríos*, ___ D.P.R. ___ (1996), op. de 17 de abril de 1996, **96 J.T.S. 56**, págs. 996-997; *Sanabria v. E.L.A.*, ___ D.P.R. ___ (1993), op. de 17 de febrero de 1993, **93 J.T.S. 24**, pág. 10411.

6. Nada hay en el expediente que apunte en la dirección a que el Juez del Tribunal de Primera Instancia abusó de su discreción al determinar que los demandados fueron temerarios en la litigación del pleito; razón por la cual, no habremos de intervenir en la imposición ni cuantía de los honorarios de abogados.